UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

KACHINA VILLAGE, LLC,                          Case No. 15-10140-t11

       Debtor.

## MEMORANDUM OPINION

Before the Court are a secured creditor's motion to designate its collateral as "single asset real estate" (or "SARE") and Debtor's motion to set the monthly interest-only payment required if the subject property is SARE. The crux of the dispute is whether the property comes within an exception to the SARE designation for certain residential property. For the reasons set forth below, the Court concludes that Debtor's property does not fall within the exception, and therefore is SARE. The Court also concludes that the required monthly interest-only payment to LANB would be at the contract rate of 5.5%.

### I.     FACTS[1]

Debtor is a New Mexico limited liability company. On January 26, 2015, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Debtor owns a 1.259 acre parcel of land (the "Property") in the Village of Taos Ski Valley, New Mexico (the "Village"). In addition, Debtor's Schedule B lists bank accounts containing about $5,040, $100 in cash, office furniture and equipment, and a 2014 Subaru Crosstrek.

---

[1] The parties waived their right to an evidentiary hearing and consented to the Court ruling on the briefs and affidavits filed in connection with the motions. The Court also took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may, sua sponte, take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013), affirmed, 498 B.R. 852 (N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

The Property, located near a ski lift in the Village, is undeveloped. Debtor represents that the Property is zoned for mixed use and cannot be subdivided. Debtor also represents that the restrictive covenants binding the Property require mixed-use development or multiple residences.

In 2007 Debtor obtained a conditional use permit for the Property that allowed commercial and residential development. Debtor's plan in 2007 is not clear from the record, but included the construction of more than four residential units.

The conditional use permit expired around 2009. Debtor recently submitted an updated development application and plan to the Village of Taos to renew the conditional use permit. Debtor's current development plan is to build five single-family houses, a three-unit town house, and a fringe commercial building. To date, the Village has not acted on Debtor's request for an updated conditional use permit. It is unclear when any construction might begin; it is possible the Village might have to install a new water tank before the Property could be developed as planned.

Notwithstanding potential delays, Debtor's principal John Halley believes that a mixed use development permit could be approved in the future and plans to construct both residential and commercial units on the Property.

Los Alamos National Bank ("LANB") holds a promissory note in the original principal amount of $330,000, secured by a mortgage on the Property. The non-default interest rate under the note is 5.5% per annum. The default interest rate is 16%. The note provides that the interest rate will never be less than 5.5%.

Debtor has not made a payment to LANB since August, 2012. LANB filed a foreclosure action against Debtor on May 1, 2013. LANB began charging default rate interest at that time. Debtor's statement of financial affairs indicates the action is still pending.

## II. DISCUSSION

A. <u>SARE and Relief from the Automatic Stay</u>. Section 101(51B)[2] defines "single asset real estate"[3] as:

> [R]eal property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.

Section 362(d), which addresses relief from the "automatic stay," gives creditors with liens on SARE special protection:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . .
>
> (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief … or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—
>
> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>
> (B) the debtor has commenced monthly payments that—
>
> (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
>
> (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate....

11 U.S.C. § 362(d)(3).

In other words, the Court must modify the automatic stay as to SARE within the specified

---

[2] Unless otherwise indicated, statutory references are to Title 11 of the United States Code.
[3] Often referred to as "SARE."

period unless the debtor files a plan that appears to be confirmable within a reasonable time, or starts making monthly interest-only payments at the non-default contract rate. *See In re Bluejay Properties, LLC,* 2014 WL 948631, *2 (10th Cir. BAP 2014) (summarizing § 362(d)(3)).

Sections 101(51B) and 362(d)(3) were added to the Code as part of the Bankruptcy Reform Act of 1994. *In re Philmont Devel. Co.*, 181 B.R. 220, 223 (Bankr. E.D. Pa. 1995). "The purpose of § 362(d)(3) is to address perceived abuses in single asset real estate cases, in which debtors have attempted to delay mortgage foreclosures even when there is little chance that they can reorganize successfully." 3 Collier on Bankruptcy, ¶ 362.07[5][a] (16th ed. 2010). *See also In re Scotia Pacific Co., LLC,* 508 F.3d 214, 225 (5th Cir. 2007) (noting that "§ 362(d)(3) … expedite[s] the time for SARE debtors to file a plan of reorganization or commence making monthly payments, failing which the automatic stay is promptly lifted"); *In re Caroline Pediatric Eye Properties, LLC,* 2015 WL 1806047, *3 (Bankr. M.D.N.C. 2015) ("[S]ection 362(d)(3) was enacted to assist secured creditors in single asset real estate cases[.] For this reason, cases that fall within the SARE designation are forced to proceed on an expedited timeline.") (internal quotations omitted).

  B. <u>Is the Property SARE</u>?

    1. <u>General Test for SARE</u>. Most courts break the definition of SARE into three parts:

(1) The property must be a single parcel or project;

(2) The property must generate substantially all of the debtor's income; and

(3) The debtor cannot conduct any substantial business other than operating the property. *See, e.g., In re Scotia Pacific Co., LLC,* 508 F.3d 214, 220 (5th Cir. 2007) ("Three requirements emerge from th[e] definition [contained in § 101(51B)] which must all be met for a

debtor to be considered a SARE debtor…."); *In re Meruelo Maddux Properties, Inc.,* 667 F.3d 1072, 1076 (9th Cir. 2012) ("Single asset real estate by statute is defined as real property that meets three elements"); *In re Yishlam, Inc.,* 495 B.R. 328, 330 (Bankr. S.D. Tex. 2013) (adopting the three part test); *In re Iowa Hotel Investors, LLC,* 464 B.R. 848, 851 (Bankr. N.D. Iowa 2011) (same). "If a debtor fails to meet any prong, it is not a [single asset real estate debtor]." *Scotia Pacific Co.,* 508 F.3d at 220.

2. The Exception for Certain Residential Real Estate. The SARE definition contains an exception: Property that otherwise qualifies is not SARE if it is "residential real property with fewer than 4 residential units" (the "Residential Exception"). 11 U.S.C. § 101(51D). Here, Debtor does not dispute the Property qualifies under the general test, but argues it is not SARE because it falls within the Residential Exception. For the reasons below, this argument is unavailing.

a. The Residential Exception May Only Apply to Improved Land. Debtor argues, inter alia, that the Property comes within the Residential Exception because it is unimproved, and therefore has fewer than four residential units. The Court disagrees. As an initial matter, it is not clear that the Residential Exception applies to undeveloped land. Residential real property is not defined by the Bankruptcy Code, and there is no legislative history addressing its meaning. The most natural reading of "residential real property with fewer than four residential units" is property zoned for residential development that is improved with houses, condominiums, apartments, or the like. The Court is not convinced that a developer holding 100 unimproved residential lots could avoid the SARE designation because it had not commenced construction on the petition date.

Excluding unimproved land from the Residential Exception is consistent with the case
-5-

law, which generally holds that raw land intended for development constitutes SARE. *See, e.g. In re Mountain Edge LLC,* 2012 WL 4839784, at *3 (Bankr. D.N.M. 2012) (generally accepted that raw law acquired or held for development is SARE); *In re Kkemko, Inc.*, 181 B.R. 47, 51 (Bankr. S.D. Ohio 1995) (applying concepts of real estate law to conclude that "single asset real estate" includes raw land); *In re Light Foot Group*, LLC, 2011 WL 5509025 at *4 (Bankr. D. Md. 2011) (residential development was SARE despite incidental projected income from repairs); *In re Pensignorkay, Inc.*, 204 B.R. 676, 683 (Bankr. E.D. Pa. 1997) (undeveloped parcel held for development was SARE); *In re A-1 Management Corp.,* 2011 WL 5509262, *1 (Bankr. S.D. Fla. 2011) (finding that the debtor was a SARE entity where "its sole asset is a vacant parcel of mixed use real property….").

      b.  <u>In Any Event, the Property Does Not Come Within the Exception</u>. Even if raw land could come within the Residential Exception in certain instances, the Property here does not. A good example of raw land that might come within the Residential Exception would be between one and three lots, zoned strictly for residential development, upon which the debtor intended to build from one to three houses. In such a situation it might be fair to exclude the property from the Code's SARE provisions.

  This case is quite different. Here, the zoning allows commercial development, the Debtor's former intention was to build four or more residential units, and the Debtor's current intention is to do that as well (plus build a commercial building). The restrictive covenants associated with the Property require mixed use or multiple residences. None of this points to the Residential Exception.

  Courts typically discount the debtor's professed intention for the subject property, especially if it differs from past use. *See, e.g., In re Hassen Imports Partnership,* 466 B.R. 492,

507 (Bankr. C.D. Cal. 2012) ("In deciding whether property constitutes 'single asset real estate,' the Court must look to current facts, not to those existing in the past, nor to Debtor's aborted plans for the future."), quoting *In re Charterhouse Boise Downtown Props., LLC*., 2008 WL 4735264, at *1–2 (Bankr. D. Idaho 2008). Considering Debtor's future plans seems appropriate in this case, however, because they are clearly inconsistent with the Residential Exception. The Court is reluctant to punish Debtor's principal for his truth and candor (which the Court applauds), but the fact is that Debtor's intentions for the Property are inconsistent with a finding that the Residential Exception applies.

The Court concludes the Property is SARE within the meaning of § 101(51B).

C. <u>Interest-Only Payments</u>. Having determined the Property is SARE, Debtor must do one of the following within 30 days to avoid stay relief under § 362(d)(3): (1) commence interest-only payments to LANB; or (2) file a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time.

The parties initially disputed the amount of the interest-only payments. They now agree that in the event the Property is SARE, monthly interest payment to LANB should be based on the non-default rate of 5.5% per annum under the note.

## III. <u>CONCLUSION</u>

The Court concludes Debtor's Property qualifies as SARE. If Debtor elects to commence interest-only payments to LANB to avoid stay relief, such payments would be based on a non-default contract rate of 5.5%.

A separate order will be entered.

_____

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: September 15, 2015

Copies to:

Don F. Harris
1516 San Pedro Drive NE
Albuquerque, NM 87110

James Jurgens
100 La Salle Cir., Suite A
Santa Fe, NM 87505